Our next case for argument today is 22-1863 Castro v. McDonough. Mr. Carpenter, please proceed whenever you're ready. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Albert Castro. Mr. Castro seeks the following relief from this Court in this appeal. He asks first that this Court find that the Veterans Court had a duty upon receipt of his January 23, 2016 letter to the Veterans Court that was date-stamped by the Veterans Court as having been received on February 1, 2016, which is found in Appendix 96-97, that that document should have been docketed by the Veterans Court as correspondence as a possible notice of appeal and then issuing an order for Mr. Castro to advise the Court as to whether or not he did or did not desire to appeal the Board's October 2015 decision. Had that been done, all of the various additional circumstances that took place in this case over the next number of years up until the... Okay, so Mr. Carpenter, let me just make sure, because this is one of the messier procedural cases that I've seen. So let me just make sure I understand a little bit about what happened from a factual standpoint. So Mr. Castro served in the U.S. Navy, and then he filed a claim some years later for PTSD. He did. And that claim was sort of repeatedly denied in various bodies at various locations, but ultimately it was granted, correct? It was. And so the ultimate conclusion is that he does, in fact, have PTSD, that it was, in fact, a result of his service. Correct. And he is now receiving benefits. He is. And this case is about whether or not he should have gotten benefits back to an earlier date and time based on one of his filings, and not just whether the benefits should have started in... And what year did the benefits actually start, at what year? I believe it was 20... I think it's February 2nd, 2016. 2015, that's correct, yeah. So it would be the difference between October of 2011, the date that he filed his original claim, and the date of the presumed date of reopening. Okay, so there's no question he's got PTSD. There's no question it's related to his military service. The only question is what is the date on which his benefits should have begun? Correct. Okay. And so why do you think it should go back to October 11th, or October of 2011? Because we believe, Your Honor, that his correspondence with the Veterans Court constituted a... Give me a date, because like I said, there's so many pieces of correspondence here. January 23rd, 2016, and that's at Appendix 96 to 97. And that was date stamp received by the Veterans Court. The Veterans Court, in response to that correspondence, merely forwarded to the Board of Veterans' Appeals, with no instructions and no directions to the Board as to what to do with that documentation, and no direct response to Mr. Castro. As a consequence, Mr. Castro presumed that his board decision was final. But it was not, in fact, final, because if there was, in fact, an appeal, then that would have suspended the finality until the disposition of his appeal. That never happened because the Veterans Court did not docket that correspondence as a notice of appeal. There is currently no case law or statutory provision that addresses specifically this circumstance. This court has found in a number of cases that when a notice of appeal is misfiled with the agency or with the board, that that misfiling counts as a filing with the court. Here, however, we are talking about a direct correspondence that was within 120 days from... Okay, so let me just make sure I understand. You're talking about whether his November 2015 filing, is that the one that you're arguing was an appeal that therefore made the October 2015 decision not be final? Is it the November 2015 filing? November 2015 filing? I'm just trying to keep track in my head of which ones you're talking about, because the government has argued that you forfeited some of these arguments by not specifically making them below. So I'm just trying to sort of pin you down so I know exactly which documents you're saying are the ones that resulted in a non-final decision. We believe that his February 4, 2016 correspondence to the court constituted a potential notice of appeal, which suspended as a matter of... I'm just going to give you an explanation. Because you've given three dates. Yeah. Okay, so the dates you've given, you said the January 23, 2016 document should have been interpreted as a notice of appeal. You said the February 2, 2016 document is a possible notice of appeal. And you just agreed with Judge Moore's question, and you said the November 2015 communication is a notice of appeal. Are you arguing all three are notices of appeal? I just want to make sure. What I'm saying, Your Honor, is that within the 120-day period from the date of the board's decision, the October 2015 decision, there was correspondence received by the Veterans Court on multiple occasions that would have indicated that there was a potential appeal. Which is your best one, though? If you could just let us have one to aim at. Which of these three do you think is your best one that you're going to say is the notice of appeal? Just so I can focus on that. Let me just go to the actual document, as opposed to my notes, Your Honor. I apologize. That's a good thing. I believe that the best one is the one that I started with. The January 23, 2016? Yes, Your Honor. The page 96? Yes. And that that was stamp received by the Veterans Court on February 1, 2016. Am I wrong about this? Isn't this issue still pending before the CABC in docket number 21-6507? So isn't this an issue that hasn't actually been resolved by the lower tribunal yet? I do not believe so, Your Honor, because what has been stayed is an expectation that Mr. Castro will come forward and show that that document was a notice of appeal. That then puts the burden on him to have made that showing how many years later, after the correspondence was made. What I'm suggesting is that that improperly shifts the burden to the veteran. That the veteran should have been put on notice by the Veterans Court in 2016. But how is this a question of law? Unfortunately, and I'm just going to say this for the students' benefits, we don't have the right to review fact findings in these kinds of cases. We can only review legal questions. And whether something constitutes a notice of appeal or not is a question of fact. And so we surely can't look at that January 23, 2016 document and make an assessment as an appellate court about whether factually that is or is not qualified as a notice of appeal. So we have to, all we can do is review whatever the CAVC did do on legal questions, right? That's correct. How do we give you the relief that you're seeking under those circumstances? Well, I believe that that relief is possible based upon a finding of law that the correspondence... Finding of law. Those words don't go together. I apologize. That's okay. Based upon a legal determination that correspondence from a pro se veteran in this system to the Veterans Court that would possibly be a notice of appeal, suspends the finality of that board decision. And then in this case... Under what law? Like how, what regulation are we interpreting? What statute are we interpreting? How can I do what you're asking? It goes to 7266, the notice of appeal statute, which authorizes persons adversely affected by a board decision to seek review by the Veterans Court. And upon the receipt of a notice of appeal, the board decision that is being appealed becomes non-final until such time as the Veterans Court makes a disposition on that notice of appeal. And it is that suspension of finality that undermines the various and sundry proceedings that were undertaken by a pro se appellate who is suffering from a psychiatric disability to proceed to reopen a claim, to establish that he has in fact submitted new and material evidence, to establish that he is in fact entitled to that. And then he brings a separate claim because he thinks that the board decision in 2015 was final, and so he brings a cue action. That cue action then ends up in two consolidated cases in front of the Veterans Court. One that deals with the effective date of the grant of service connection on a claim to reopen. But a claim to reopen as a matter of law is predicated on a previously disallowed claim. There was no previously disallowed claim here. It's a hard situation though, here, where Mr. Castro, when he is representing himself, without a lawyer, where he specifically said, he asserted in that November 2015 correspondence, that there was a clear and unmistakable error. So doesn't that mean the board has to... He does, Your Honor. And he thought that there was a clear and unmistakable error because that was a final board decision. But if that final, if that board decision was not final because there was a notice of appeal submitted to the Veterans Court, then no cue claim can lie. Yes, he did try to assert. But you're saying the notice of appeal would have occurred at a later time than the letter of urging cue. Because it did, because we're talking, the letter asserting cue was the first communication. I'm saying that the assertion of cue, it has to be predicated based upon the case law with a final decision. There was no final decision. My question to you is, does it matter that his assertion of cue... No, it does not matter. I'm sorry, Your Honor. I apologize. I didn't answer my question. I just wanted to make sure I asked it correctly. No, no, no, it does not matter. And so you're saying the timing doesn't matter. No, no, what matters is was there or wasn't essentially a prima facie reason to believe that there was non-finality in the board's decision. And that exists in this record because there was this communication. I absolutely agree with you. The problem is I don't see how that is anything other than a fact finding that I don't have the authority to make. And so I don't know what to do about it. I mean, we have these situations like with Mr. Castro, where, you know, we've got an honorable veteran that served his country and ended up with PTSD. And unfortunately, at a time when the government wasn't recognizing PTSD. And so these veterans were not getting the benefits that they deserved when they deserved them. But Congress did not see fit to give me fact finding review authority because, you know, I find for you every day of the week, Mr. Carpenter. But, you know, I don't have that power. So I don't see how I get past my own limitations, which only allow me to address legal errors. And in this kind of case, I don't see how I can get around that. Well, Your Honor, you're reviewing a decision of the Veterans Court that made legal determinations regarding two pending appeals that were consolidated. And in one, they affirm they cannot possibly have affirmed because they had no jurisdiction. You can't have jurisdiction over a question of effective date on a reopened claim if there was no previously disallowed claim as a matter of law. And the Veterans Court affirmed that decision. That was an error of law. That error of law affects the consolidated case in which the court has now opened below another proceeding. And if that proceeding proceeds only on the basis of whether or not the document submitted was or was not a notice of appeal, the likelihood is Mr. Castro is going to lose on that issue because that misframes the issue as a matter of law. Then we're back here for another appeal on that case. And poor Mr. Castro here, like a tennis ball, is being bounced back and forth across the net in which the institutions that are supposed to be protecting him are simply not doing their job. And I believe this court has jurisdiction to order the Veterans Court to recognize their own error of law in not taking appropriate action back in 2016. If that determination is made, then that means the board's decision was not final and nothing that happened in these other proceedings is relevant. Okay, well, we've exhausted all your time. Let's hear from the government. Thank you very much. Thank you. May it please the court. Ming-Yu Oh with the Justice Department here for the Secretary of Veterans Affairs. There are basically two overarching issues in this case. One relates to waiver forfeiture. We title it jurisdiction in our briefs, but that's the first issue where we contend that Mr. Castro has waived many of the arguments that he is currently raising here on appeal. And this court has precluded from considering them, particularly his arguments related to the AMA. The second issue is, and this assumes that the court has jurisdiction, of course, is whether Mr. Castro's reading of the AMA and its application in this case is correct. Mr. Castro's counsel has not really raised those arguments here on appeal, so we will sort of diminish our focus on that. What I do want to focus on is, Judge Morrison, with your questions about what's the primary issue here. I do think you're correct. The primary issue relates to what is the proper effective date for Mr. Castro's grant of PTSD and TDIU benefits. The VA and the board conferred him a starting date, an effective date of February 2, 2016. The Veterans Court affirmed that decision based on prevailing law within the Veterans Court, based on cases like Warren and Sears, which indicate that when you reopen a claim, the starting date or the effective date is generally the date at which you reopen the claim. Here, there's no dispute that Mr. Castro reopened his claim on February 2, 2016. Is there an outstanding question, though, following everything you've said so far, but isn't there an outstanding question of whether some of those earlier communications, for example, the January 23, 2016 communication, was in fact a notice of appeal, which would then change the timing? So that's sort of the second question, and I think, Judge Stoll, you're correct. It's sort of focused on whether that issue is still pending below as part of the Veterans Court's adjudication. As you know, the Veterans Court separated out that portion of the case and is now adjudicating that issue, so the argument that Mr. Carpenter, my friend on the other side, is raising now seems a bit premature because it's presently pending below, and what he's insisting that this court do is usurp the Veterans Court's role in making that initial determination in the first instance. It's pending below in the form of a Q claim, right? First, it's taken sequentially. First, whether it is a notice of appeal, and if it is, you can't bring a Q claim because the claim is non-final. But assuming it isn't a notice of appeal, then the Veterans Court would have to address the Q portion of it. Okay, so just making it, this was a very procedurally difficult case to wrap my head around. So just to make sure, so you're telling me what's still pending below, and this is at the Veterans Court, not the court, right? Correct, Veterans Court. Is a question of whether or not the January 23rd, 2016 filing should be construed as a notice of appeal. Correct. And that's what's still pending below for resolution in the first instance. That is correct. And if so, and if the CAVC, and what standard is the CAVC using to make that determination? I'm going to presume it's de novo because it's a question of law. It's going to be interpreting its own rules as to what constitutes a notice of appeal. There are two subparts to that. Subpart A is this mechanical feature, what was included within the notice. I think the Veterans Court has already held mechanically, he's met all the requirements of subpart A. Then the second part under the Veterans Court's rules, subpart B is based on the contextual indicators, what was Mr. Castro's intent? And that's where the Veterans Court initially said, well, the board's correct that it doesn't seem that Mr. Castro's intent actually was to file a notice of appeal. But then in hindsight, after emotional reconsideration, vacated that decision and said, you know what? The board can't make that determination in the first instance. We're going to open a separate case and we're going to make that determination for ourselves. So that's what's on appeal now. And why, what's the holdup in resolving that case? I think it's because Mr. Castro appealed to this court. But that's a separate case. That's on a parallel track. It's not, that case shouldn't be stated because of us. Right. But I think one of his arguments as part of this case was that, it's super confusing, I grant you judgment. This is like the messiest one of these I've ever had. It's extremely messy. It's a transfer for me as well. I'm also reading the briefs. I had to read them multiple times. But I think what Mr. Castro is arguing is, stay the first case because what I'm arguing in the second case will eradicate what's going on in the Veterans Court. Like we can basically just make it moot. Because if you accept my argument here, whatever's happening below with the Veterans Court is irrelevant. So you're saying that Mr. Castro asked for the Veterans Court to stay that case, but they're going to determine whether the, I guess, January 2016 letter was in fact a notice of appeal? I don't know if he, I know he filed a motion for stay on one of the dockets. What I do know is the Veterans Court said, went after it, separated one of the consolidated cases, and said we're going to establish whether the January 23rd letter is a notice of appeal. Said we're going to treat this as a separate appeal and, you know, we're going to address the case in due course. And then what happened was Mr. Castro filed a motion for stay pending appeal to this court. So I asked you, I said, did the Veterans Court stay it? And you're saying you don't know whether they stayed the case or not. Do you know if a stay request was made? I know a stay request was made. I don't see a stay entry on the docket of the 20, whatever. Stay that. That case has the potential to resolve everything, and then I wouldn't be sitting here with this mess. I think there's a possibility that that could happen. But, you know, the Veterans Court did separate out. Here's the thing. I'm just going to tell you my feelings about this case, okay? My feelings about this case are as follows. Who cares that in November of 2015, Mr. Castro, who was pro se, wrote the words clear and unmistakable error or clear and unmistakable whatever. He doesn't know. He's not a lawyer. He's a veteran with PTSD. So if we're looking at what his intent was, how is his intent in that document not clearly, clearly to demonstrate that he thinks he should win and that they wrongly decided his case in October 2015? I don't see how the Veterans Court below, when they do get to this issue, could reach any conclusion other than that. And also the January 2016 letter, which was sent to the Veterans Court requesting reopening and or review for his PTSD claim. Why wouldn't that be understood to be a noticeable difference? I know I can't make these fact findings in the First Instance Council, but you seem like a very reasonable man. How come you don't want to settle this? Seriously. I know the government feels like it should never settle anything, but why not settle this? You've got a veteran with PTSD, and you've got a guy who clearly, repeatedly filed stuff wanting to show that the decision was wrong. So how is that not? Why aren't we just looking at this? Look, that was a noticeable. Well, Judge Moore, the important point, I think, from our perspective, and this is Justice Department perspective, is that there is an adjudication still going on below that's currently within the purview of the VA. You don't have to have that go on. You can settle this case. I think we need to let the adjudicated process happen as it relates to whether the January 23rd letter. That is just a fact question. That is just a in-the-weeds, minutiae fact question related to whether or not the November 2015 document or the January 2016 document, as you said, everything's resolved in Mr. Castro's favor except this last question. Hmm. What was this man's intent? The man with PTSD who's not a lawyer, what was his intent? His intent was to let you know that you got it wrong and you should have gotten his benefits. I don't know how you can string those documents any other way. Look, Judge Moore, I grant you that if we… And that's the case. Settle this. I grant you that if we were to look at this… Let Mr. Castro through one more minute of this nonsense. How long has this case been going on? The first claim was filed in 2011. The second claim was filed in 2016. But I'll grant you reasonable minds can differ on what the January 23rd letter actually was. But what happened below was the board said that wasn't an appeal. The Veterans Court initially affirmed that decision and said, look, we don't see how this constitutes a notice of appeal. And I think actually the part that the Veterans Court really got hung up on was the fact that Mr. Castro said, look, I'm pursuing my claims before the VA or the RO and also the board. And then he sent it to the Veterans Court and said, I'm not sure this should have gone to you. And so that was actually some language. The Veterans Court said, well, look, this sort of is an indicator of intent on whether he wants to appeal. He's not even sure whether it should have gone to the Veterans Court. Well, why do you think he's not sure? Because he's a veteran with PTSD and not a lawyer. He doesn't know where to file it. All he knows is something's wrong and I need my benefits. I don't want to speak too out of turn because it's not my purview, but it would be hard just in general to settle a case where you had two favorable adjudications indicating that it wasn't a notice of appeal. It's not hard to settle a case when it's the right thing to do. And the Veterans Court is addressing that issue now. I think that's the only thing I wanted to ask. Can you answer a housekeeping question for me? Sure. So you mentioned that there was no stay on the docket list. Like there's been the motion filed, but the stay hasn't been entered. Has anything else happened on the docket post that motion? So it's almost like a de facto stay because there's nothing going on as far as the docket? I don't know. Maybe if I look at the docket today there will be a new entry, but last I checked there wasn't any further activity on that pending issue. I don't want to belabor the point. I had some prudential waiver forfeiture arguments. We raised them in our brief. Mr. Cascio's argument under the AMA, pages 31 through 35 of our response brief, we addressed them there. Oh, I'm sorry. I have a question, but yeah, you go as well. Maybe I'll sneak one in. Go for it. What about the timeline points? There was a question that Judge Stoll asked your opposing counsel about did it matter whether the cue mentioned in November of 2015 occurred before the potential notice of appeal in January 2016. Can you tell me whether it matters to you in terms of that timing, one occurring before the other? I think it sort of can. It depends on how probative a fact finder wants to make that because technically a cue claim is supposed to come after the appeal is closed, and the fact that Mr. Castro bought the cue claim after the board decision became final but before he had filed what he calls a notice of appeal now would indicate that he thought, we're done, I'm not going to appeal it, therefore I'm filing my cue motion. That was in November 2015. But Judge Moore, I'm going to grant you your point here. He has PTSD, so maybe he just doesn't know the operative procedure. It's kind of nonsensical to say cue, right? Given the standard and burden of proof to show a clear and unmistakable error. It's a much higher burden of proof. It would be much easier. Much harder, correct. If he knew, he surely would have wanted to file a notice of appeal. Right. But let me just put an endorsement here on the VA. What the VA did here I think was exactly what it should do, which it said, look, we don't know if this is a cue motion or a reconsideration motion. We're going to treat it as both. And then it did treat it as both, giving Mr. Castro sort of the benefit of the doubt, given that he was a pro se. So I think the VA handled that aspect of it the right way. It later got this January 23rd letter. The Veterans Court got it. It had some verbiage in there that caused the Veterans Court to doubt that that was a notice of appeal and send it to the board. So that's how we find ourselves in the present procedural posture. If there are no further questions, we respectfully. I actually want to ask you an AMA-related question, which is why do you think this is a dismissed for lack of jurisdiction? I mean, isn't there a question of law here, which is whether the CABC properly applied the pre-AMA version of the statute? Isn't that a question of law? It's generally a question of law, but I think you have to apply the principles of waiver under 4C, which is this court's 2002 en banc decision, and it doesn't fit under any of those exceptions to waiver. And here I think you have a very clear indication from Mr. Castro's counsel that he actually was waiving the arguments under the AMA. If you look at page 6 of the Veterans Court's decision, this is footnote 1, where the Veterans Court actually says, this is the last sentence. So this is prudential. You're making a prudential argument. It's a prudential argument, correct. Yeah, because there's no doubt we have the authority to review it, correct? If it fits under one of those exceptions, right. The court could review it. But again, this is page 6 of the Veterans Court decision, note 1. There's no assertion that the new statute, which is the AMA, or the rule should apply here. So there's no assertion by Mr. Castro. Another place where. . . Can I ask you something else? Sure. Are you also going to vote to cite JA 205? Exactly. That's where I was going next, where he actually says this is a legacy case, just outright in his motion for reconsideration. So to me, that's a very clear indication that he's waiving the arguments, and he's represented by counsel at that point. Can you sum up what relief you'd like us to give you? We think the Veterans Court's decision should be affirmed. Affirmed or dismissed? Yeah. Affirmed. Do you know my answer to that? Oh, I'm sorry. No, I spoke too quickly. Or is it dismissed in part? Yeah, yeah, yeah. That's a good question. I feel like you need some answers. You're right. Prudential waiver, it's not a jurisdictional issue, I don't think. I don't know that it would. . . Could be affirmed in part, dismissed in part? I want to answer one way or the other as to what you'd like us to do. I would say. . . In the red brief, you said we'd like jurisdiction over the AMA argument. I know that's what we wrote in our brief, but I do think the argument actually fits better under this waiver forfeiture. Yeah. Prudential considerations test. I guess I'd have to look back. . . Would it be an affirmed in part maybe? Yeah, yeah. I'd have to go back to 4-C to figure out how it was procedurally handled. But whatever 4-C. . . Would you be happy with either an affirmed or a dismissed? I would, yes. Thank you, Your Honor. Thank you, Your Honor. All right, Mr. Carpenter. That's perfect. Three minutes, thank you. May it please the Court, Your Honor, I thank the Court for its kind indulgence. This is a very challenging case. On behalf of Mr. Castro, I wish to thank you for encouraging the government to do the right thing. Unfortunately, I do not believe the message will be received, and it will be up to you to decide how to proceed with this. What the Court has encouraged is the correct remedy. This matter should end. I have nothing further to say unless there's further questions from the panel. I have one question for you. I just want to know, did Mr. Castro seek stay of the Veterans Courts? He did. Why? Because he believed that he could not prevail on the Q claim, and he believed that he would not prevail on . . . Let me see. I understand that first they would determine whether, in fact, he filed a nuisance appeal before ever considering the Q claim. And so if they thought he filed a nuisance appeal, then they would consider that. But why stay that if that's the issue, essentially, that's being presented to us? Because, A, he thought there would be additional delay in making that determination. When you say he thought, he thought, was he represented by counsel at that point? Yes. Yes, he was. I'm not sure it's appropriate for me to suggest that I disagree with counsel's decision, but regardless, the point is that the length of time that it would take to litigate that issue is no different, in my view, than the length of time it takes to litigate this issue. And what Mr. Castro is seeking . . . Well, we certainly gave you some good sound bites, didn't we, though, for if you have to litigate this issue? Yes. And that's what I want to thank the panel for. Very good. That's, I think, important to Mr. Castro. We thank both counsel. This case is taken under submission.